FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

2013 OCT 10 PM 1:04

## FOR THE EASTERN DISTRICT OF LOUISIANA

WILLIAM W. BLEVINS
CLERK

NO. **13-6111**

|  |  |  |
|---|---|---|
| KING EDWARD TENANT, LLC, | * | |
| THROUGH KING EDWARD | * | |
| MANAGER, LLC | * | |
| ITS TAX MATTERS PARTNER, | * | SECTION "___"  MAG. "___" |
|     Petitioner | * | **SECT. E MAG. 4** |
| | * | |
| VERSUS | * | |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| ACTING THROUGH COMMISSIONER | * | |
| OF INTERNAL REVENUE | * | |
|     Respondent | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PETITION TO QUASH SUMMONS

The Petition of King Edward Tenant, LLC ("KET"), a Louisiana limited liability company, appearing herein through King Edward Manager, LLC ("KEM"), a Louisiana limited liability company, its Managing Member and Tax Matters Partner ("TMP"), appearing herein through undersigned counsel, moves this Court, pursuant to Section 7609(c)(1) of the Internal Revenue Code ("IRC") to quash the Summons issued on September 20, 2013, by the Commissioner of Internal Revenue, acting through Bruno M. Alonzo, Jr., Revenue Agent 1000999136, and as the grounds therefor, avers as follows:

1.

Jurisdiction and venue are proper in this Court and district under IRC § 7609(h) as KET is domiciled in New Orleans, Orleans Parish, Louisiana, which is in this District.

___ Fee _$400.00_
___ Process _____
_X_ Dktd _____
___ CtRmDep _____
___ Doc. No. _____

1

21/13770/D/11

2.

On September 20, 2013, A. Thomas Leonhard, Jr., the President of Historic Restoration, Incorporated ("HRI"), a Louisiana corporation, which is the Managing Member of HRI King Edward Manager, LLC, a Louisiana limited liability company, which is the Managing Member of KEM, the Managing Member and TMP of petitioner, KET, was served with a Summons (the "Summons") issued on September 20, 2013, by Internal Revenue Agent, Bruno M. Alonzo, Jr. ("Alonzo"), seeking the production of certain documents and information relating to an Internal Revenue Service ("IRS") audit of KET's United States Partnership Tax Return for the tax year ended December 31, 2010 (the "Audit"), which is being conducted by Alonzo.  A copy of the Summons is attached hereto as Exhibit A.

3.

The Audit was commenced on January 11, 2013 when Alonzo served some eight (8) separate Information Document Requests ("IDRs") on KET, requesting documents, records and information for the tax year under Audit, and also tax years 2009 and 2011.  Alonzo's correspondence of January 11, 2013, together with the eight (8) IDRs, are attached hereto as Exhibit B, *in globo.*  The IDRs were vague, confusing and duplicative of one another.  Clearly, however, they sought the production of a vast number and volume of documents relative to the Historic Rehabilitation Tax Credits ("HRTCs") generated in connection with the rehabilitation and redevelopment of a project located in Downtown Jackson, Mississippi, formerly consisting of three separate parcels, each of which contained an existing historic building (*i.e.,* those buildings commonly referred to as the King Edward Hotel Building, the Standard Life Building and the Hines Motor Company Building), which were renovated to create a mixed-use development, consisting of a hotel, apartments, commercial space and parking (the "Project").

2

The Project took place over multiple years, involved numerous lenders, investors and participants, both in the public and private sectors, and several closings relating to different aspects of the Project financing. The HRTCs under audit here were but one portion of the overall Project financing.

4.

KET has been informed by Alonzo that the Audit was triggered by the opinion of the United States Third Circuit Court of Appeals in *Historic Boardwalk Hall v. Commissioner of Internal Revenue*, 694 F.3d 425 (3rd Cir. 2012), where, essentially, as a result of issues relating to the timing of capital contributions and other issues relating to the structure of the transactions there at issue, the HRTC investor was deemed not to have been a partner in the partnership which was awarded the HRTCs. The Third Circuit's opinion in *Historic Boardwalk Hall* did not turn on any pre-closing legal or tax advice that was provided to the parties to the transaction. In fact, there was no issue whatsoever in that opinion relating to any pre-closing legal or tax advice that may have been provided to the parties. According to Alonzo, that the focus on the Audit is solely on whether factors similar to those present in the *Historic Boardwalk Hall* transaction are present in structure of the King Edward transaction, such that the partner which to which the HRTCs were allocated, is deemed not to be a partner in KET. There has been no suggestion that there is any issue under Audit relating to the right of KET to the HRTCs or the amount of the HRTCs awarded, based upon the amount of qualified rehabilitation expenditures ("QREs") incurred in conjunction with the Project.

5.

KET has made multiple responses to the IDRs, including but not limited to responses dated February 20, 2013 (Exhibit C hereto), March 25, 2013 (Exhibit D hereto), March 28, 2013

3

(Exhibit E hereto), April 17, 2013 (Exhibit F hereto), August 15, 2013 (Exhibit G hereto), August 20, 2013 (Exhibit H hereto) and August 21, 2013 (Exhibit I hereto), in conjunction with which, KET has substantially and cooperatively produced in excess of 2,000 pages of documents to Alonzo, including, but not limited to, executed agreements, financial records, including source, banking, tax and audit records, accountant's work papers, engagement letters and legal opinions.

6.

At issue in the Summons is the information requested in IDR RA-05.  That IDR, which lists as its "Subject," "Advisers-Legal, Bankers, Tax and Accountants," and requests the following:

> In order to facilitate the examination of the Form 1065 for 2010 please provide the following items:
>
> **Historical Rehabilitation Tax Credit**
>
> Please provide the following: (provide a response to all items – indicate if not applicable or are not held by the taxpayer)
>
> 1.     Please provide a list of advisers – names and addresses.
>
> 2.     All engagement letters, representation letters, agreements, and *correspondence relating to legal and tax advice* relating to the rehabilitation project.
>
> 3.     Provide copies of all documentation for services provided by each adviser in connection with the Offering Memorandum and rehabilitation project, including but not limited to documentation of the time spent on each service by each adviser with itemized bills and timesheets.
>
> 4.     Copies of all correspondence between all advisors, or related party, and any agent (including its banking firm, law firm, or accounting firm). For this purpose, the term "correspondence" includes letters, notes, memoranda, or other communications (including attachments and exhibits), whether in written or electronic form.

5.      All documents *relating or referring to written or oral legal advice or tax advice in connection with the Transaction, the legal consequences of the transaction, and the tax return position to be taken with respect to items relating to the rehabilitation project.*

(Emphasis added).

For the convenience of the Court, a separate copy of IDR RA-05 is attached hereto as Exhibit J. The categories of documents requested in IDR RA-05 are numbered in the correct sequence above, but the actual IDR contains two Items that are numbered "3," such that the last Item thereon is numbered "4."

7.

Exhibit A to the Summons demands production of the same information and documents that were requested in Items 1 through 4 (sic) of IDR RA-05, with one additional Item, that being Item 6, which states:

> If any document that is responsive to this summons is being withheld due to a claim of privilege, please provide an index which specifies which privilege(s) is (are) being claimed for each portion of each document withheld. Please provide a detailed description of each document withheld, including the Bates number range of the document, the date of the document's creation, the type of document, the subject matter of the document, and the name(s) and title(s) of the author(s) and any recipients of the document. In addition, please provide the reason that each document falls within the privilege claimed for it.

8.

KET has provided responses to IDR RA-05 and also to Item 6 of Exhibit A, which was also the subject of a letter from Alonzo to KET, dated August 2, 2013, requesting the same information that is requested in Item 6 of Exhibit A to the Summons, *i.e.,* a privilege log.

9.

In response to IDR RA-05 (Items 1-5 of Exhibit A to the Summons), KET responded on April 17, 2013 as follows:

21/13770/D/11

5

In response to IDR...RA-05, Item 1, you are advised that, with regard to the Historic Rehabilitation Tax Credit under Section 47 of the Internal Revenue Code of 1986, as amended ("HRTC"), there was no counterpart here to Paul Hoffman, who was the "promoter" in the Historic Boardwalk Hall transaction; nor, other than the attorneys and accountants representing the parties, were there other third-party advisers, or other third-parties who "solicited, endorsed, or recommended, the transaction" with respect to the HRTC. Accordingly, in response to IDR...RA-05, Item 1, you are advised as follows: KET and its Managing Member and Tax Matters Partner ("TMP"), King Edward Manager, LLC ("KEM"), were represented by Elkins, PLC, 201 St. Charles Avenue, Suite 4400, New Orleans, Louisiana 70170 and, in particular, Gary J. Elkins. Mississippi counsel for KET and KEM was Michael F. Cavanaugh, 998 Howard Avenue, Biloxi, Mississippi 39530. Chevron, TCI, Inc. was represented by Holland & Knight, 10 St. James Avenue, 11th Floor, Boston, Massachusetts 02116. The project accountants were Reznick Group, P.C., 7501 Wisconsin Avenue, Suite 400E, Bethesda, Maryland 20814.

* * *

IDR RA-03, Item 1(b) requests correspondence and e-mails relative to the "Offering Memorandum – Historic Rehabilitation Tax Credit." As there was no such "Offering Memorandum," there is no correspondence nor are there any e-mails that are responsive to this request. The same is true of IDR RA-05, Item 3, to the extent that it seeks the production of "all documentation for services provided by each adviser in connection with [the] Offering Memorandum...."

IDR RA-05, Item 2 requests engagement or representation letters or agreements. There are no such documents between KET, or KEM on behalf of KET, and Elkins, PLC. If we discover responsive documents between KET, or KEM on behalf of KET, and any other legal or tax professional, we will review them and, if appropriate, supplement our response to IDR RA-05, Item 2.

IDR RA-05, Item 2 also requests "correspondence relating to legal or tax advice relating to the rehabilitation project." We believe that any correspondence that would be responsive to this request is subject to of privilege under all applicable privileges, including without limitation, the attorney-client privilege, work product doctrine and the privilege under 26 U.S.C. § 7525(a).

IDR RA-05 contains two separate Items 3. The first seeks production of "all documentation for services provided by each adviser in connection with... [the] rehabilitation project, including but not limited to documentation of the time spent on each service by each adviser along with itemized bills and timesheets." The second seeks "[c]opies of all correspondence between all advisors, or related party (sic), and any agent (including its investment banking firm, law firm, or accounting firm)." Given that the parties' advisors were their attorneys and tax professionals, this request is similar to IDR RA-05, Item 2, discussed above, in that we believe that much of the information requested in these two items is subject to claims of privilege of the type identified in the preceding paragraph.

21/13770/D/11

Also, services provided and the documentation generated in conjunction with the King Edward Project involved aspects unrelated to the HRTC, for example the extensive conventional indebtedness and bond financing documentation. The documents in the files of this firm alone that would, arguably, be responsive to this request are voluminous, as you and I have previously discussed, and the process of reviewing all of these documents for responsiveness and then, for privilege, is an extremely burdensome and monumental undertaking. Further, all of the parties' negotiations and agreements are reflected in the executed documents and agreements that we have already provided to you.

With respect to IDR RA-05, Item 4, we are including herewith legal opinions rendered by this firm and by Mr. Cavanaugh in connection with the closings that occurred on March 14, 2008 and May 12, 2009, specifically, (i) letter dated March 14, 2008 from Elkins PLC to Chevron, TCI, Inc. (Bates pages TP 1601 - 1605);(ii) letter dated March 14, 2008 from Michael F. Cavanaugh to Chevron, TCI, Inc. (Bates pages TP 1606 - 1610); (iii) letter dated May 12, 2009 from Elkins PLC to Chevron, TCI, Inc. (Bates pages TP 1611 - 1616 ); and (iv) letter dated May 12, 2009 from Michael Cavanaugh to Chevron, TCI, Inc. and Elkins PLC (Bates pages TP 1617 - 1621).

10.

Subsequently, KET received a letter from Alonzo, dated August 2, 2013 (the "Missing Responses Letter"), relative to "missing responses." With regard to IDR RA-05, this letter addressed only a portion of Item 2, as to which KET had asserted claims of privilege. The Missing Responses Letter requested that KET provide Alonzo with a "privilege log" with respect to documents as to which a claim of privilege was being made. With regard to IDR RA-05, the Missing Responses Letter states:

2. **IDR-RA-05 – Advisers – Legal, Bankers, Tax and Accountants**

- **Item 2)** *"Correspondence that would be responsive to this request is subject to of (sic) privilege under all applicable privileges, including without limitation, the attorney-client privilege, work product doctrine and the privilege under 26 U.S.C. § 75259(a)(sic).["]*

- **If any document that is responsive to our request is being withheld due to a claim of privilege, please provide us with an index which specifies which privilege(s) is (are) being claimed for each portion of each document withheld. Please provide a detailed description of each document withheld, including the Bates number range of the document, the date of the document's creation, the type of document,**

7

the subject matter of the document, and the name(s) and title(s) of the author(s) and any recipients of the document. In addition please provide the reason that each document falls within the privilege claimed for it....

**Alonzo did not note any other "missing responses" or any other deficiencies in KET's responses to IDR RA-05.** A copy of the Missing Responses Letter is attached hereto as Exhibit K.

11.

KET responded to the Missing Responses Letter under cover of August 15, 2013 (see Exhibit G hereto). At that time, KET provided additional documentation to Alonzo in satisfaction of other IDRs as to which he had asserted that there were "missing responses" and, in response to the request that KET respond further to IDR RA-05, Item 2 by producing a privilege log, KET informed Alonzo as follows:

> As an initial matter, it should be noted that, to the extent that IDR RA-05, Item 2, seeks "...**correspondence** *relating to legal or tax advice* **relating to the rehabilitation project**," that Item, and Items 3 and 4, all seek virtually the same information. We have previously objected to any request for documents and information, in whatever, form, relating to "legal or tax advice" provided to KET or its Managing Member, King Edward Manager, LLC ("KEM") by their attorneys and tax professionals. We reiterate those objections here. **Your specific request for such documents and information, by definition, seeks *only* the production of privileged documents.** Your requests that we "provide a detailed description of each document" and the "reason that each document falls within the privilege claimed for it" beg the question. Were we to comply with those requests, we would violate the very privilege that we assert.

> Further, the production of a privilege log would require us to sift through thousands of e-mails generated over a period of some two years, during which there was constant communication between KET/KEM and their attorneys. We have already objected to the blanket request for the production of the documents themselves on the grounds that the request is onerous and overly broad.

> The production of a privilege log would involve the same process of reviewing every one of the thousands of e-mails that were generated in connection with this project, most of which are communications between KET/KEM and their attorneys, made for the purpose of securing and providing legal and/or tax advice.

21/13770/D/11

This process could take weeks to complete and would cause our client to incur substantial attorney's fees. Under the circumstances, the request for a privilege log is not reasonable. We also fail to see that the production of a privilege log would be of any benefit to you in conducting this audit. All that will be demonstrated by a privilege log is that there were on-going and extensive communications between KET/KEM and their attorneys regarding the project.

(Emphasis added).

12.

Shortly after making the above response, KET received a letter (the "Pre-Summons Letter") from Nora Beltran, Global Team Manager, Large Business and International Division, suggesting that KET had provided incomplete responses to *all* of IDR RA-05, which is categorically denied. As stated above, in the Missing Responses Letter, Alonzo did not identify any deficiencies in KET's responses to IDR RA-05, but asked only for the production of a privilege log. A copy of the Pre-Summons Letter is attached hereto as Exhibit L.

13.

KET responded to the Pre-Summons Letter on September 9, 2013, reiterating its prior responses to IDR RA-05, but supplementing its responses to IDR RA-05, Items I and 2 by providing an engagement letter between Pailet, Meunier, and LeBlanc and KET for accounting services, confirming that there was no engagement letter between KET and the Reznick accounting firm, identifying accountants at Pailet, Meunier and LeBlanc, as, "advisers," and providing the address for Pailet, Meunier and LeBlanc. A copy of KET's response to the Pre-Summons Letter is attached hereto as Exhibit M. The Summons followed.

14.

Item I on Exhibit A to the Summons asks for a list of "all advisers, including names and addresses." This information has already been provided to Alonzo in KET's responses to the IDRs. KET has identified its attorneys and its accountants/tax professionals and has provided

9

their addresses. *See* Exhibits E and F hereto. While there were banks which acted as lenders and investors in conjunction with the Project, no bankers provided any "advice" to KET or any related party in conjunction with the Project. Furthermore, this Item, which is the same as IDR RA-05, Item 1, was not identified as being deficient in the Missing Responses Letter and, as a result, KET asserts that its prior responses to this Item were adequate and acceptable. Thus, KET submits that this present request is not interposed for any necessary or legitimate purpose, but only for the purpose of harassment.

15.

Item 2 of Exhibit A to the Summons initially requests "all engagement letters, representation letters [and], agreements...relating to legal or tax advice from all advisers...." KET has provided Alonzo with these documents. *See* Exhibits E, F and K hereto. This portion of Item 2, which requests the same information as IDR RA-05, Item 2, was not identified in the Missing Responses Letter as being deficient and, as a result, KET asserts that its responses to this Item were adequate and acceptable. Other than the information and documents already provided to Alonzo, KET has no documents that are responsive to this Item, as the IRS has been informed. Thus, KET submits that this present request is not interposed for any necessary or legitimate purpose, but only for the purpose of harassment.

16.

Item 2 of Exhibit A to the Summons also requests "correspondence *relating to legal or tax advice* from all advisers relating to the historic rehabilitation tax credit project." (Emphasis added). This portion of Item 2, which requests the same information as IDR RA-05, Item 1, is the only item on IDR RA-05 that was identified as being deficient in the Missing Responses Letter and then, only to the extent that a privilege log was not provided. IDR RA-05, however,

10

had not requested a privilege log. No privilege log exists. Item 2 requests *only* documents that are, by definition, subject to the attorney-client privilege and/or work product privilege and/or the privilege under 26 U.S.C. § 7525(a).  As this portion of Item 2 seeks only documents containing privileged information, KET submits that it is not interposed for a necessary or legitimate purpose, but only to obtain privileged information to which it is not entitled.  As written, Item 2 requests privileged information, nothing else.  Moreover, the IRS has been provided with all of the non-privileged agreements, documents, records and financial information that it has requested and should not be permitted to also delve into pre-closing legal and tax opinion information, as the same is not relevant.  There no assessment of any deficiency in this case and there is, accordingly, no assessment of penalties and no claim by KET of reliance on legal or tax advice in defense of any such deficiency/penalty assessment.  Furthermore, whatever pre-closing legal and/or tax advice was provided to KET prior to the execution of the definitive transaction documents is not relevant, as the executed documents reflect the final, operative agreements of the parties thereto.  Finally, there is no support for such requests in the *Historic Boardwalk Hall* opinion, which provides the roadmap for this Audit.

17.

Item 3 of Exhibit A to the Summons requests "documentation for services provided by each adviser in conjunction with Offering Memorandum (sic) and the historic rehabilitation tax credit project, including but not limited to documentation of the time spent on each service by each adviser along with itemized bills and timesheets."  This Item is the same as IDR RA-05, first Item 3.  Alonzo did not identify any deficiency with respect to this Item in the Missing Responses Letter and, as a result, KET asserts that its previous response to this Item was adequate and acceptable.  Further, the "advisors" were KET's attorneys and accountants. The

Project involved numerous aspects that had nothing to do with the HRTCs and the services provided and the documentation generated in conjunction with the Project included services relative to those unrelated aspects of the transaction, including the extensive conventional indebtedness and bond financing.   KET has been informed that the focus of the Audit is on whether the *Historic Boardwalk Hall* factors, which led the Third Circuit to conclude that the tax credit investor in that case was not a partner, are present in the King Edward Transaction. Given the scope of the Audit, KET submits that the invoices and detailed timesheets of its attorneys and accountants have absolutely no relevance to the correctness of KET's 2010 U.S. Partnership Tax Return.  KET further submits that Item 3 is interposed for no other purpose than as a fishing expedition for the IRS to attempt to ascertain from the detailed, itemized time entries on the timesheets what legal and/or tax advice was provided to KET, which, for the reasons already stated in Paragraph 16 above, is completely irrelevant unless and until there is a deficiency assessment and a defense by KET to the assessment of the deficiency and/or penalties based upon its reliance on legal and/or tax advice.  Accordingly, KET submits that the documents responsive to Item 3 of Exhibit A of the Summons are not being requested for any necessary or legitimate purpose, but only to obtain information that is protected from disclosure as privileged.

18.

Item 4 of Exhibit A to the Summons requests "all correspondence relating to the rehabilitation tax credit project between all advisors, or related party, and any agent (including its investment banking firm, law firm or accounting firm).  This Item requests the same information that is requested in IDR RA-05, second Item 3.  Again, this Item was not identified in the Missing Responses Letter as being deficient, and, as a result, KET contends that its prior responses to this Item were adequate and acceptable.  Further, KET asserts that this Item is vague

21/13770/D/11

to the point that it is impossible to ascertain what documents are being requested. "Advisors" consist of KET's attorneys and accountants. KET cannot discern whether "related party" refers to a "related party" to an advisor, or a "related party" to the taxpayer. "Agent" is defined as "*its* investment banking firm, law firm or accounting firm." KET assumes that "its" refers to KET. KET had no investment banking firm and, otherwise, this Item appears to request correspondence between KET's attorneys and accountants, which KET asserts are or may be privileged and that are irrelevant for the reasons stated in Paragraph 16 above. Additionally, there are thousands of e-mails (correspondence) relating to the "rehabilitation tax credit *project*," *i.e.,* the Project as a whole, that have absolutely no connection to the HRTCs that are under audit. This Item would require KET and its attorneys and accountants, potentially, to have to review and produce all of these thousands of e-mails, over a period of multiple years, which will be both extremely time-consuming and expensive for KET. KET has provided the IRS with the executed agreements relating to the HRTCs and any negotiations resulting in the final executed agreements are subsumed therein. This Item is not only vague and overly broad, it is overreaching and, again, is nothing more than a "fishing expedition." Thus, if the Summons is not quashed, KET would request that this Court order the IRS and Alonzo to more clearly and narrowly identify the documents that are being requested in Item 4.

19.

Item 5 of Exhibit A to the Summons requests "[a]ll documents *relating or referring to written or oral legal advice or tax advice* from all advisers in connection with the historic rehabilitation tax credit project, the legal and tax consequences of the historic rehabilitation tax credit project, and the tax return position to be taken with respect to items relating to the historic rehabilitation tax credit project." (Emphasis added). This Item requests the same information

21/13770/D/11

that is requested in IDR RA-05, Item 4. This Item was not identified in the Missing Responses Letter as being deficient, and, as a result, KET contends that its prior responses to this Item were adequate and acceptable. Further, this Item *only* seeks the production of documents that are privileged by definition and that are irrelevant for all of the reasons stated in Paragraph 16 above. Thus, KET submits that this request is not interposed for any necessary or legitimate purpose, but only to obtain privileged documents.

20.

Item 6 of Exhibit A to the Summons requests a privilege log, specifically, "a detailed description of each document withheld...the date of the document's creation, the type of document, the subject matter of the document, and the name(s) and title(s) of the author(s) and any recipients of the document...[and] the reason that each document falls within the privilege claimed for it." This Item requests the same information requested in Item 2 of the Missing Responses Letter. Under the circumstances, where Items 2-5 of Exhibit A to the Summons request only documents that are, by definition, privileged, KET submits that this request is not interposed for any necessary or legitimate purpose, but only to obtain privileged information. KET has consistently objected to the IRS's request for documents and information, in whatever, form, relating to "legal or tax advice" provided to KET or its Managing Member, KEM by their attorneys and tax professionals. The current demand in the Summons for the creation of a non-existent "privilege log" containing "a detailed description of each document" and the "reason that each document falls within the privilege claimed for it" would result in a violation of the very privileges that KET invokes.

**WHEREFORE,** King Edward Tenant, LLC, though its Managing Member and Tax Matters Partner, King Edward Manager, LLC, prays that after due proceedings are had, this

14

Court issue an order quashing the Summons issued by the Commissioner of Internal Revenue, through its Revenue Agent, Bruno M. Alonzo, Jr., be quashed in its entirety or, alternatively, appropriately limiting the scope of the Summons.  King Edward Tenant, LLC further prays for all general and equitable relief.

Respectfully submitted,

_____

Gary J. Elkins (#5316)
Yvonne Chalker (#14950)
Thomas M. Beh (#24018)
Elkins, P.L.C.
201 St. Charles Avenue, Suite 4400
New Orleans, LA 70170-4400
Phone:  (504) 529-3600
Fax: (504) 529-7163

Attorney for Petitioner

PLEASE SERVE:

Kenneth A. Polite, Esq.
US Attorney for LAED
Attn:  Civil Department – Peter Mansfield
Acting Civil Chief
650 Poydras Street, Ste. 1600
New Orleans, LA  70130

Eric Holder, Esq.
Attorney General of the United States
US Department of Justice
950 Pennsylvania Ave., NW
Washington, DC  20530-0001

Internal Revenue Service
Attn:  Mr. Bruno M. Alonzo, Jr.
CPA (EN: 02-49725)
450 Golden Gate Ave., 6th Floor M/S 6107
San Francisco, CA  94102

21/13770/D/11